UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY TESORIERE and NANCY TESORIERE,<br><br>Plaintiffs,<br><br>-against-<br><br>HARWAY TERRACE, INC., BOARD OF DIRECTORS of HARWAY TERRACE, INC., and NINA SHALSHINA, individually and as a Board Member,<br><br>Defendants. | **Civil Action No.:**<br><br>**COMPLAINT AND CIVIL JURY DEMAND** |

Plaintiffs, ANTHONY TESORIERE ("Anthony") and NANCY TESORIERE ("Nancy" and when referred to with Anthony, collectively "Plaintiffs"), by their undersigned attorneys, as and for their Complaint against Defendants, HARWAY TERRACE, INC. ("Harway"), BOARD OF DIRECTORS of HARWAY TERRACE, INC. (the "Board") and NINA SHALSHINA, individually and as a Board Member ("Shalshina" and when referred to with Harway and the Board, collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This action is brought pursuant to, among others, Title 42 of the United States Code Service (the "USCS"), Title 8 of the Administrative Code of the City of New York ("NYC Human Rights Law" or "NYCHRL"), the New York State Human Rights Law ("NYSHRL") and Sections 13-c and 17 of the New York State Private Housing Finance Law to seek redress for, among other things, Defendants' harassment and threats against Plaintiffs; Defendants repeated, continuing, and

1

unauthorized fines against Plaintiffs; and Defendants' repeated, continuing harassment by threatening to take away Plaintiffs' parking spot close to the building entrance – an accommodation required for the disabled Plaintiff – in order to extort payment of the unauthorized fines.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

2.      Following the filing of this Complaint, a copy of this Complaint will be served on the New York City Commission on Human Rights, and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirement of § 8-502 of the New York City Administrative Code.

3.      Any and all other prerequisites to the filing of this action have been met.

## JURISDICTION AND VENUE

4.      Plaintiffs' claims arise under the Fair Housing Act, 42 U.S.C.S §§ 3601, 3613 and 3617. Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over the New York statutory and common law claims asserted herein under 28 USC §§ 1331, 1367.

6.      Venue in this District is proper under 28 U.S.C. § 1391(b) and (d) because that is the judicial district in which the Plaintiffs reside and the acts giving rise to Plaintiffs' claims arose.

## JURY DEMAND

7.    Pursuant to the Seventh Amendment of the United States Constitution, Plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

8.    Plaintiff Nancy Tesoriere is a natural person residing in the State of New York, Kings County. Plaintiff Nancy Tesoriere is a shareholder-tenant of Harway. On October 11, 2018, Plaintiff Nancy Tesoriere had her surname changed from Fago to Tesoriere, her maiden name.

9.    Plaintiff Nancy Tesoriere is a person with disabilities, a handicapped individual as such term is defined in the Fair Housing Act ("FHA").

10.    Plaintiff Nancy Tesoriere is a person with a disability as such term is used in the NYSHRL and the NYCHRL.

11.    Harway is aware that Plaintiff Nancy Tesoriere is a person with disabilities, handicapped and disabled, as those terms are defined by statute.

12.    Plaintiff Anthony Tesoriere is a natural person residing in the State of New York, Kings County. Plaintiff Anthony Tesoriere is a shareholder-tenant of Harway. On October 11, 2018, Plaintiff Anthony Tesoriere had his surname changed from Fago to Tesoriere, his mother's maiden name. Plaintiff Anthony Tesoriere lives with and cares for his mother, Plaintiff Nancy Tesoriere.

13.    Upon information and belief, at all times relevant and material herein, Harway is a domestic business corporation duly organized, existing, and authorized to do business under and by virtue of the laws of the State of New York, with a

registered address for service of process located at 280 Madison Avenue, Suite 300; New York, NY.

14.    Harway has described itself in court filings as a market-rate conventional cooperative housing corporation, privatized pursuant to Article 2 Section 35 of the Private Housing Finance Law on or about December 11, 2015 (the "Mitchell-Lama Housing Law") as a for-profit corporation under the New York Business Corporation Law (the "BCL").

15.    Upon information and belief, Harway's principal office is located at 2475 West 16th Street; Brooklyn, New York.

16.    Upon information and belief, Harway is the owner of two (2) large-scale residential buildings located at 2475 and 2483 West 16th Street, Brooklyn, New York, 11214.

17.    Upon information and belief, Harway is exclusively managed by and through the Board of Directors of Harway Terrace, Inc. (the "Board" as previously defined).

18.    Defendant Nina Shalshina is the President of the Board of Directors and in August of 2021, she testified that she had been the President of the Board of Directors of Harway for four (4) years. Defendant Shalshina is an attorney admitted to practice law in the State of New York.

## FACTUAL BACKGROUND

19.     Plaintiffs collectively reside in an apartment building located at 2483 West 16th Street, Brooklyn, New York, 11214 (hereinafter, the "Premises").

20.     Plaintiffs are shareholders and proprietary lessees of Harway, with an interest appurtenant to Unit 5B at the Premises (the "Unit").

21.     Plaintiffs obtained their shares appurtenant to the Unit on September 23, 2016 and entered into a Proprietary Lease with Defendant as of that same date, which was fully executed on November 2, 2016.

### *Plaintiff Anthony Tesoriere Seeks to Run for Position on the Board*

22.     On September 11, 2019, Plaintiff Anthony Tesoriere contacted the Board via electronic communication ("email") to obtain instructions on how to run for a Board position.

23.     On September 12, 2019, Plaintiff Anthony Tesoriere received the instructions from the Board via email and on that same date he filled out a questionnaire which accompanied the Board's instructions.

24.     On September 13, 2019, Plaintiff Anthony Tesoriere requested to rescind his questionnaire and application to run for a position on the Board after other tenants within the Premises cautioned him that the President of the Board, Defendant Shalshina, was someone he did not want to get involved with or challenge in an election, as he was planning to do.

25.    However, between September 13, 2019 and September 19, 2019, Plaintiff Anthony Tesoriere was contacted by a considerable number of tenants within the Premises, encouraging him to run.

26.    Thus, on September 19, 2019, Plaintiff Anthony Tesoriere contacted the Board and asked to be reinstated as a candidate to run in an election for a position on the Board.

27.    On September 21, 2019, the Board responded to Plaintiff Anthony Tesoriere via email and informed him that "[w]e are unable to grant the permission you requested" without further explanation.

28.    On that same date, September 21, 2019, Plaintiff Anthony Tesoriere responded and asked whether his change of mind "violate[d] a particular bylaw of our coop or [if it] was strictly a personal/board decision." Plaintiff Anthony Tesoriere contacted the Board again on September 25, 2019, inquiring as to why he was being disqualified from running.

29.    Unbeknownst to Plaintiff Anthony Tesoriere, he had unwittingly injected himself into an ongoing dispute as to the legitimacy of Defendant Shalshina's position as a Board member.

30.    Because Defendants were aware that Plaintiff Anthony Tesoriere was receiving overwhelming support from tenants in opposition to Defendant Shalshina's hand-picked slate, Defendants unjustifiably claimed that Plaintiff Anthony Tesoriere could not run for the Board.

31.     On October 17, 2019, Plaintiff Anthony Tesoriere appeared at the 2019 Annual Meeting and Election for Directors of Harway Terrace, Inc. ("the 2019 Annual Meeting and Election") and was collecting signatures to request that a Special Meeting of the shareholders be held.

32.     Defendant Shalshina and the rest of the sitting Board were present while Plaintiff Anthony Tesoriere was collecting these signatures.

33.     A sitting Board member's husband and the building manager for Harway attempted to physically take the clipboard that Plaintiff Anthony Tesoriere was using to collect signatures and that held the signature pages.

34.     The Board instructed the manager and security personnel to demand to see what was on the clipboard and ordered Plaintiff Anthony Tesoriere's ejectment from the meeting.

35.     Plaintiff Anthony Tesoriere told them that he lives in the Premises, he is a shareholder and a resident, and that he does not have to leave.

36.     The security guard employed by Defendants is a physically large individual who caused Plaintiff Anthony Tesoriere to fear that he was in imminent danger of being physically assaulted. The security guard, upon Defendants' instructions, ejected Plaintiff Anthony Tesoriere from the meeting.

37.     The following Monday, October 21, 2019, the shareholders of the Premises received a notice under their door containing a snippet of Defendant Shalshina's new altered bylaws. Section 2, entitled "Special Meetings" was purportedly amended to provide that Special Meetings of the shareholders may only

be called if there are at least 51% percent of the shareholders of the outstanding capital stock signing on to such request. Attached hereto as Exhibit "1" are the purported bylaws changed after Plaintiff Anthony Tesoriere was collecting signatures to request that a Special Meeting be held. Prior to the 2019 Annual Meeting and Election, "one quarter" of the shareholders of record of the outstanding capital stock were needed to call a Special Meeting. Attached hereto as Exhibit "2" are the previously existing bylaws before this purported change.

*Issuance of the Bogus Fine*

38.     In November of 2019, a few weeks after the 2019 Annual Meeting and Election, Defendants made false, unfounded and bogus claims that Plaintiffs had painted their Unit without complying with one of the numerous and constantly changing House Rules.

39.     In or around January 2020, Defendants issued a fine to Plaintiffs in the amount of $1,000.00 on Plaintiffs' maintenance statement for a purported violation of Harway's "House Rules" (the "January 2020 Fine").

40.     Despite issuing a fine on Plaintiffs' maintenance statement, Harway never provided Plaintiffs with notice of a violation, nor explanation nor reason in writing as to the alleged violation.

41.     Instead, when Plaintiffs were forced to inquire with Harway as to the fine over the telephone, Harway informed Plaintiffs that the fine was for unauthorized painting allegedly undertaken in the Unit.

42.     However, no such painting, much less an unauthorized painting, has occurred in the Unit.

43.     Plaintiff Nancy Tesoriere's home health care aide who was present at her Unit during the time frame from September of 2017 to June of 2020, six (6) days a week from 11:00 am to 7:00 pm, attested to the fact that no painting nor any other type of construction work was done in the Plaintiffs' Unit. Annexed hereto as Exhibit "3" is Attia Mahrous Tahany's Affidavit.

44.     Because of the fine, Plaintiffs sought assistance from Brooklyn Legal Services Tenant Rights Coalition (the "Coalition") who then emailed Defendant Harway on July 16, 2020 regarding "maintenance fees and other charges that have been assessed against the unit in recent months." A copy of the email exchanges from July 16, 2020 through July 29, 2020 are annexed hereto as Exhibit "4" (the "July 2020 Email Exchange(s)"). In response to the Coalition's request for information, Harway informed the Coalition that "[t]here are administrative charges on the maintenance bill as a result of a violation of the cooperative's House Rules . . . . " *Id.*

45.     By email dated July 16, 2020, the Coalition asked for Harway to "provide more details regarding the violation of house rules (date of violation, rule violated, etc.)" and also asked if copies of any documents "containing these details" were sent to the Plaintiffs. *Id.*

46.     In response, Harway asked the Coalition to call it. *Id.* at email dated July 17, 2020. By correspondence dated July 21, 2020, the Coalition memorialized the telephone conversation with Harway. A copy of the July 21, 2020 letter is annexed

hereto as Exhibit "5" (the "July 2020 Letter"). In that correspondence, the Coalition confirms that Harway fined Plaintiffs $1,000.00 for "allegedly repainting" the Unit without permission. *Id.*

47.     The Coalition's July 2020 Letter requests "a detailed accounting of any funds that have been applied to the violation fee thus far, and the source of that money." *Id.*

48.     Additionally, pursuant to Harway's and the Board's ad hoc policies, there is a $50.00 surcharge, in addition to the amount of the initial fine imposed, for each month any incurred fine is not paid in its entirety. No notice of this surcharge has ever been provided to Plaintiffs.

### *Defendants Institute "Election Procedures" and the Issuance of Baseless Fines to Prevent Opposition Candidates from Challenging Defendant Shalshina's Reign*

49.     In September of 2019, after Plaintiff Anthony Tesoriere challenged Defendants' disqualification of his Board candidacy, Defendants distributed 2019 "Election Procedures" which provide that shareholders shall not be eligible to run for the Board of Directors if they are not current in their maintenance and other charges at the time of being nominated, for the entire twelve (12) months prior to the date or nomination. Annexed hereto as Exhibit "6" is a copy of the purported Election Procedures.

50.     In November of 2019, after the October 2019 Annual Meeting and Election, Defendants first claimed that Plaintiffs had painted their Unit without complying with one of the numerous and constantly changing House Rules.

51.     Subsequent to this November 2019 claim, Defendants issued the January 2020 Fine.

52.     Defendants waited until January of 2020 to place the bogus fine on Plaintiffs' account so that Plaintiffs would not be eligible to run for a Board position for that year. *See* Exhibit 6 (shareholders shall not be eligible to run for the Board of Directors if they are not current in their maintenance and other charges at the time of being nominated, for the entire twelve (12) months prior to the date or nomination).

53.     Defendants' "Election Procedures" document Defendants' scheme and plan to ensure that there would not be an open, transparent, or democratic governance of Harway nor measures taken to protect the interests of shareholders.

54.     Indeed, Defendants' "Election Procedures" are a product of Defendants' campaign of threats and harassment against Harway tenants that have questioned Defendant Shalshina's actions or been deemed a threat to her sovereign reign.

55.     Defendant Harway has fully supported and/or importuned Defendant Shalshina in her endeavors.

56.     Harway tenants have maintained in separate litigation, as the Plaintiffs herein maintain, that Defendants have acted as they have in order to invalidate these shareholders from running for Board positions and to prevent them from challenging Defendant Shalshina's purported presidency and her handpicked Board over which she wields unilateral power and decision-making control. Several of these tenants, including Plaintiffs, have filed complaints with the Attorney General's Office. *See* Exhibit "7" annexed hereto.

57.     This accusation that Defendant Shalshina handpicks a Board over which she wields unilateral power and decision-making control is not a mere conclusory allegation. Indeed, a deposition transcript of a Board member from other litigation involving shareholders and Defendant Shalshina has shown that the Board member had absolutely no knowledge of the Board's business or actions taken by it or of Defendant Shalshina's business or actions taken in the name of the Board.

58.     The 2019 Election Procedures also provide that no nominee will be eligible if he or she has been a Petitioner/Plaintiff/Defendant/Respondent in any litigation with the Corporation or the Board of Directors at the time of nomination or within the prior twenty-four (24) months. *See* Exhibit 6.

59.     No corporate books or records have ever been provided evidencing the legitimacy of these purported procedures. No corporate books or records have ever been provided evidencing the legitimacy of the so-called Elections Committee referenced in the 2019 Election Procedures.

60.     While Defendants institute procedures that no nominee shall be eligible to run for a Board position if they have been involved in any litigation with Defendants within two (2) years of the election, Defendants have instituted numerous lawsuits against tenant shareholders, and yet this has not resulted in any of these Board members being invalidated from running for a position on the Board.

*Defendants Threats to Remove Plaintiffs' Required Accommodation Violates the Fair Housing Act, New York State Civil Rights Law, and New York City's Human Rights Law*

61.     Here, Defendants have pushed their unlawful scheme of threatening and harassing conduct against Harway tenants even further with these Plaintiffs. Defendants have attempted to extort accession to their unlawful conduct (payment of the fine and surcharges and thus a concession to the unlawful conduct) by holding the disabled Plaintiff's required accommodation hostage in exchange for Plaintiffs' concession to the Defendants' unlawful conduct.

62.     Included as part of the rights afforded residents in the Premises is a parking space located in a lot owned by Harway.

63.     Plaintiffs' assigned parking spot is a spot that is very close and accessible to the front entrance to the Premises and thus is critical to Plaintiff Nancy Tesoriere due to her disability.

64.     Plaintiff Nancy Tesoriere's parking spot is a required accommodation for her disability.

65.     In writing, Defendants have repeatedly threatened removal of the parking spot and the inability to ever obtain another parking spot if the fine and surcharges are not paid.

66.     Defendants' conduct falls squarely within the Fair Housing Act's proscribed conduct, New York State's Civil Rights Law's proscribed conduct, and New York City's Human Rights Law's proscribed conduct: Defendants' clear and unequivocal intent is to coerce, intimidate, threaten, and/or interfere with Plaintiff Nancy Tesoriere's exercise of her right to an accommodation.

13

67.     In or around November 19, 2021, Defendants sent Plaintiffs a warning letter advising that Plaintiffs were in arrears in the amount of $2,790.58 and that "[e]ffective December 1, 2021, you [Plaintiffs] will no longer be able to use the parking space." A copy of the November 2021 Letter is annexed hereto as Exhibit "8" (the "November 2021 Letter). Additionally, the warning letter stated that "[w]e cannot guarantee that you will get a parking spot back either. Spaces will be assigned based on availability." *Id.*

68.     The November 2021 Letter further states that

> "[a]ny party who is more than 2 months in arrears will automatically forfeit his/her right to said space and will be required to remove their vehicle from the parking garage…. In addition, please be advised that future arrears will cause you to immediately lose your parking spot without warning.

*Id.*

69.     Despite being informed that the January 2020 Fine was baseless, and that the information contained in the November 2021 Letter was false, Defendants continue to harass Plaintiffs by, among other things, continuing to charge additional surcharge funds on a monthly basis in connection with the January 2020 fine, and continue to threaten to remove Plaintiffs' parking spot located at the Premises.

70.     Plaintiff Anthony Tesoriere was forced to institute pro se litigation in state court in February of 2022. He received a temporary restraining order, restraining Defendants from taking away Plaintiffs' parking spot. That action has since been discontinued without prejudice. However, Defendants still continue to

14

impose the unlawful fine and surcharges and still continue to threaten removal of the parking spot.

*Specifically Pled Allegations of Fraud*

71.     In the pro se state court action, Defendants represented in a Verified Answer with Counterclaims that Plaintiffs violated the terms of the "By-laws, Declaration, Proprietary Lease, and House Rules" by failing to fill out an Alteration Agreement. *See* Index No. 95/2022, NYSCEF Doc. No. 4 at ¶¶25-37.

72.     Defendants falsely claimed and falsely procured statements that "[o]n or about December 6, 2019, Harway observed paint cans outside of the Unit in the public hallway." *See* Index No. 95/2022, NYSCEF Doc. No. 4 at ¶ 28.

73.     Defendants also falsely claimed that "a Harway employee approached the Unit and "observed the smell of paint and a broken and/or open door lock on the Plaintiffs' Unit. The entrance to the Plaintiffs' Unit was opened and fresh paint was observed emanating from the Plaintiffs' Unit." *Id.* at ¶29.

74.     Defendants further falsely claimed that "[f]urniture was also observed that was covered in plastic." *Id.* at ¶30.

75.     Plaintiff Nancy Tesoriere's aide, who was in her apartment from September of 2017 to June of 2020, six (6) days a week from 11:00 am to 7:00 pm never observed painting nor any other type of construction work being done in the Plaintiffs' Unit. *See* Exhibit 5.

76.     Defendants' allegations are entirely false (*see* Exhibit 5).

77.     Defendants' allegations, sworn to by Defendant Shalshina, an attorney admitted to practice law in the State of New York, were made with the intent to deceive the court and/or any party.

### New York's Private Housing Finance Law Section 13-C

78.     In March of 2022 Section 13-C was added to New York's Private Housing Finance Law with the legislative intent being "to ensure open, transparent, and democratic governance of "Mitchell-Lama" cooperatives, which are organized as limited-profit housing companies, and to protect the interests of shareholders and the public interest in preserving affordable housing." *See* New York State Assembly Bill Summary.

79.     As alleged herein and in pending litigation brought by other tenants, "[s]ince [Defendant] Shalshina was elected to the Board of Directors of the cooperative Corporation ("Board"), she has waged a war of harassment against . . . tenants that have questioned her actions. The harassment has taken the form of fines, baseless defamation actions, and attempts to invalidate the ownership of shareholders in a number of lawsuits of questionable merit." *See* New York Supreme Court Index No. 504029/2018, NYSCEF Doc. No. 178 at p.14-15 of 84.

80.     As alleged herein and in pending litigation brought by other tenants, Defendants have "attempted to ban shareholders from speaking to each other in the hallways and lobbies of the Building, let alone using common space to meet, in an effort to prevent them from organizing resistance to the increasingly bold and overt

departure from the rule of law by [Defendant] Shalshina and the Board." *Id.* at p. 24 of 84.

81.     Even Plaintiffs' attempt to institute litigation on their own did not result in Defendants relenting on this fraudulent fee imposed. Indeed, the Defendants only response, which position has consistently been, and continues to be, that Plaintiffs will continue to be subjected to this false and fraudulent fee and, if unpaid, Plaintiff Nancy Tesoriere's required accommodation will be taken away.

## COUNT I
### (Pursuant to 42 U.S.C. § 3604)

82.     Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

83.     42 U.S.C. § 3613, also known as the Fair Housing Act, provides that any aggrieved person may maintain a cause action for any alleged discriminatory housing practice. A discriminatory housing practice is defined as an act that is unlawful under section 3604 of the Fair Housing Act.

84.     Pursuant to section 3604 of the Fair Housing Act, it shall be unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in . . . that dwelling . . . or any person associated with that person."

85.     Pursuant to section 3604 of the Fair Housing Act, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices,

or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

86.     Plaintiff Nancy Tesoriere is a protected individual under the Fair Housing Act, as she is a person with a handicap as such term is defined in section 3602 of the Fair Housing Act.

87.     Plaintiff Anthony Tesoriere is a "person associated with" Plaintiff Nancy Tesoriere.

88.     At all times relevant to the facts underlying this action, Plaintiffs engaged in the exercise or enjoyment of their fair housing rights. Their parking spot is a right afforded Harway residents. The parking spot is a required accommodation for Plaintiff Nancy Tesoriere based upon her being a handicapped individual.

89.     Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and intimidated Plaintiffs by telling them that if they do not accede to, and pay the unlawful fine and surcharges, their parking spot, Plaintiff Nancy Tesoriere's required accommodation, will be removed.

90.     Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and intimidated Plaintiffs by telling them that if they do not accede to, and pay the unlawful fine and surcharges, it is not a "guarantee that [they] will get a parking spot

back either. Spaces will be assigned based on availability." *See* Exhibit 8 (the "November 2021 Letter).

91.     Defendants' conduct is more than an isolated act of discrimination; Defendants' conduct is a continuing pattern of harassment. Despite being informed that the January 2020 Fine was baseless, and that the information contained in the November 2021 Letter was false, Harway has continued to harass Plaintiffs by, among other things, continuing to threaten Plaintiffs that they will immediately lose their parking spot "without warning", continuing to threaten that there is no "guarantee" that Plaintiffs can ever get their parking spot back, continuing to coerce Plaintiffs to pay the fee and continuing surcharges and continuing to threaten Plaintiffs that they will be responsible for a monthly "late fee" and "any legal fees". *See* Exhibit 8 (the "November 2021 Letter).

92.     Defendants' refusal to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas, constitutes a separate and distinct violation of the Fair Housing Act.

93.     Thus, regardless of whether Defendants had a policy, procedure, or rule that "[a]ny party who is more than 2 months in arrears will automatically forfeit his/her right to said space and will be required to remove their vehicle from the parking garage" (Exhibit 8), Defendants were required to make modifications to that policy for Plaintiff(s).

94.     Despite being aware of Plaintiff's disabilities and despite being informed that the January 2020 Fine was baseless, and that the information contained in the November 2021 Letter was false, Defendants have refused to modify their policy in anyway and continue to threaten to remove Plaintiffs' parking spot located at the Premises.

95.     Defendants' coercion, intimidation, threats and interference with Plaintiffs' exercise and/or enjoyment of their rights under the Fair Housing Act and their failure to make reasonable accommodations constitutes discriminatory housing practices in violation of the Fair Housing Act.

96.     Defendants have continuously coerced, intimidated, threatened, and interfered with Plaintiffs' rights in an attempt to get them not to challenge and to accede to the falsely imposed fine and the underlying allegations that resulted in the fine and to chill Plaintiffs from further challenging the legitimacy of the fine.

97.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights under the Fair Housing Act, entitling Plaintiffs to an award of punitive damages.

98.     By reason of the foregoing, Plaintiffs are entitled to money damages against Defendants, in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action.

<u>COUNT II</u>
(Pursuant to 42 U.S.C. § 3617)

99.    Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

100.    42 U.S.C. § 3613, also known as the Fair Housing Act, provides that any aggrieved person may maintain a cause action for any alleged discriminatory housing practice. Discriminatory housing practice is defined as an act that is unlawful under section 3617 of the Fair Housing Act.

101.    Pursuant to section 3617 of the Fair Housing Act, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by the Fair Housing Act.

102.    Plaintiff Nancy Tesoriere is a protected individual under the Fair Housing Act, as she is a person with a handicap as such term is defined in section 3602 of the Fair Housing Act.

103.    At all times relevant to the facts underlying this action, she was engaged in the exercise or enjoyment of her fair housing rights. Her parking spot is a right afforded Harway residents. Her parking spot is a required accommodation based upon her being a handicapped individual.

104.    Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and

21

intimidated Plaintiff Nancy Tesoriere by telling her that if she does not accede to, and pay the unlawful fine and surcharges, her required accommodation will be removed.

105.   Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and intimidated Plaintiff Nancy Tesoriere by telling her that if she does not accede to, and pay the unlawful fine and surcharges, it is not a "guarantee that [she] will get a parking spot back either. Spaces will be assigned based on availability." *See* Exhibit 8 (the "November 2021 Letter).

106.   Defendants' conduct is more than an isolated act of discrimination; Defendants' conduct is a continuing pattern of harassment. Despite being informed that the January 2020 Fine was baseless, and that the information contained in the November 2021 Letter was false, Harway has continued to harass Plaintiff by, among other things, continuing to threaten to remove Plaintiff's parking spot, continuing to threaten that there is no "guarantee" that Plaintiff can ever get her parking spot back, continuing to coerce Plaintiff to pay the fee and continuing surcharges, continuing to threaten Plaintiff that she will be responsible for a monthly "late fee" and "any legal fees," and continuing to threaten Plaintiff that she will immediately lose her parking spot "without warning." *See* Exhibit 8 (the "November 2021 Letter).

107.   Defendants' coercion, intimidation, threats and interference with Plaintiff Nancy Tesoriere's exercise and/or enjoyment of her rights under the Fair

22

Housing Act constitutes discriminatory housing practices in violation of the Fair Housing Act.

108.   Defendants have continuously coerced, intimidated, threatened, and interfered with Plaintiffs' rights in an attempt to get them not to challenge and to accede to the falsely imposed fine and the underlying allegations that resulted in the fine and to chill Plaintiffs from further challenging the legitimacy of the fine.

109.   Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the Fair Housing Act, entitling Plaintiff to an award of punitive damages.

110.   By reason of the foregoing, Plaintiff is entitled to money damages against Defendants, in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action.

## COUNT III
### (Pursuant to New York City Human Rights Law)

111.   Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

112.   Pursuant to NYCHRL §8-107(5)(a)(1)(b), "it shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent . . . of a housing accommodation . . . [t]o discriminate against any such person or persons in the terms, conditions, or privileges of the sale, rental, or lease of any

such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith."

113.     Pursuant to NYCHRL §8-107(15)(b), "it is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question."

114.     Pursuant to NYCHRL §8-107(28)(c), "[i]t shall be an unlawful discriminatory for an owner, lessor, lessee, sublessee, assignee, or managing agent . . . of a housing accommodation . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation related to disability as provided in subdivision of this section."

115.     Pursuant to NYCHRL §8-107(19), "[i]t shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of such person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

116.     Plaintiff Nancy Tesoriere is a protected individual under the NYCHRL, as she is a person with a disability as such term is used in the NYCHRL.

117.     Plaintiff Anthony Tesoriere is a "person associated with" Plaintiff Nancy Tesoriere.

118.   At all times relevant to the facts underlying this action, Plaintiff Nancy Tesoriere was engaged in the exercise or enjoyment of her fair housing rights. Her parking spot is a right afforded Harway residents. Her parking spot is a required accommodation based upon her being a handicapped individual.

119.   Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and intimidated Plaintiff Nancy Tesoriere by telling her that if she does not accede to, and pay the unlawful fine and surcharges, her required accommodation will be removed.

120.   Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and intimidated Plaintiff Nancy Tesoriere by telling her that if she does not accede to, and pay the unlawful fine and surcharges, it is not a "guarantee that [she] will get a parking spot back either. Spaces will be assigned based on availability." *See* Exhibit 8 (the "November 2021 Letter).

121.   Defendants' conduct is more than an isolated act of discrimination; Defendants' conduct is a continuing pattern of harassment. Despite being informed that the January 2020 Fine was baseless, and that the information contained in the November 2021 Letter was false, Harway has continued to harass Plaintiff by, among other things, continuing to threaten to remove Plaintiff's parking spot, continuing to

threaten that there is no "guarantee" that Plaintiff can ever get her parking spot back, continuing to coerce Plaintiff to pay the fee and continuing surcharges, continuing to threaten Plaintiff that she will be responsible for a monthly "late fee" and "any legal fees," and continuing to threaten Plaintiff that she will immediately lose her parking spot "without warning." *See* Exhibit 8 (the "November 2021 Letter).

122.   Defendants' coercion, intimidation, threats and interference with Plaintiff Nancy Tesoriere's exercise and/or enjoyment of her fair housing rights as protected by the NYC Human Rights Law constitutes discriminatory housing practices in violation of the NYCHRL.

123.   Separate and apart from the above discriminatory housing practices, Defendants' refusal to make modifications in their policies that are necessary for handicapped individuals such as Plaintiff to live in the building, constitutes a distinct violation of the NYCHRL.

124.   Thus, regardless of whether Defendants had a policy, procedure, or rule that "[a]ny party who is more than 2 months in arrears will automatically forfeit his/her right to said space and will be required to remove their vehicle from the parking garage" (Exhibit 8), Defendants were required to make modifications to that policy for Plaintiff.

125.   Despite being aware of Plaintiff's disabilities and despite being informed that the January 2020 Fine was baseless and that the information contained in the November 2021 Letter was false, Defendants have refused to modify their policy in

anyway and continue to threaten to remove Plaintiff's parking spot located at the Premises.

126.   Defendants have continuously coerced, intimidated, threatened, and interfered with Plaintiffs' rights in an attempt to get them not to challenge and to accede to the falsely imposed fine and the underlying allegations that resulted in the fine and to chill Plaintiffs from further challenging the legitimacy of the fine.

127.   By reason of the foregoing, Plaintiffs are entitled to money damages against Defendants, in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action.

<u>COUNT IV</u>
**(Pursuant to New York State Human Rights Law)**

128.   Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

129.   Pursuant to New York State Human Rights Law ("NYSHRL"), codified in New York State's Executive Law §296(5)(a)(2), "[i]t shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation . . . or any agent of employee thereof . . . [t]o discriminate against any person because of . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."

130.   Pursuant to New York State's Executive Law §296(18)(2), "[i]t shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right of ownership of or possession of or the right to rent or lease housing accommodations . . . [t]o refuse to to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling . . . ."

131.   Plaintiff Nancy Tesoriere is a protected individual under the NYSHRL, as she is a person with a disability as such term is defined in the NYSHRL.

132.   At all times relevant to the facts underlying this action, she was engaged in the exercise or enjoyment of her fair housing rights. Her parking spot is a right afforded Harway residents. Her parking spot is a required accommodation based upon her being a handicapped individual.

133.   Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and intimidated Plaintiff Nancy Tesoriere by telling her that if she does not accede to, and pay the unlawful fine and surcharges, her required accommodation will be removed.

134.   Knowing that Plaintiff Nancy Tesoriere is a handicapped individual, that her parking spot is critical to her needs based upon her disability, and that it is a required accommodation, Defendants have invidiously coerced, threatened, and

intimidated Plaintiff Nancy Tesoriere by telling her that if she does not accede to, and pay the unlawful fine and surcharges, it is not a "guarantee that [she] will get a parking spot back either. Spaces will be assigned based on availability." *See* Exhibit 8 (the "November 2021 Letter).

135.   Defendants' conduct is more than an isolated act of discrimination; Defendants' conduct is a continuing pattern of harassment. Despite being informed that the January 2020 Fine was baseless, and that the information contained in the November 2021 Letter was false, Harway has continued to harass Plaintiff by, among other things, continuing to threaten to remove Plaintiff's parking spot, continuing to threaten that there is no "guarantee" that Plaintiff can ever get her parking spot back, continuing to coerce Plaintiff to pay the fee and continuing surcharges, continuing to threaten Plaintiff that she will be responsible for a monthly "late fee" and "any legal fees," and continuing to threaten Plaintiff that she will immediately lose her parking spot "without warning." *See* Exhibit 8 (the "November 2021 Letter).

136.   Defendants' coercion, intimidation, threats and interference with Plaintiff Nancy Tesoriere's exercise and/or enjoyment of her fair housing rights as protected by the NYSHRL constitutes discriminatory housing practices in violation of the NYSHRL.

137.   Separate and apart from the above discriminatory housing practices, Defendants' refusal to make modifications in their policy that are necessary for handicapped individuals such as Plaintiff, constitutes a distinct violation of the NYSHRL.

138.    Thus, regardless of whether Defendants had a policy, procedure, or rule that "[a]ny party who is more than 2 months in arrears will automatically forfeit his/her right to said space and will be required to remove their vehicle from the parking garage" (Exhibit 8), Defendants were required to make modifications to that policy for Plaintiff.

139.    Despite being aware of Plaintiff's disabilities and despite being informed that the January 2020 Fine was baseless and that the information contained in the November 2021 Letter was false, Defendants have refused to modify their policy in anyway and continue to threaten to remove Plaintiff's parking spot located at the Premises.

140.    Defendants have continuously coerced, intimidated, threatened, and interfered with Plaintiffs' rights in an attempt to get them not to challenge and to accede to the falsely imposed fine and the underlying allegations that resulted in the fine and to chill Plaintiffs from further challenging the legitimacy of the fine.

141.    By reason of the foregoing, Plaintiffs are entitled to money damages against Defendants, in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action.

<u>COUNT V</u>
**(Pursuant to New York State Private Housing Finance Law § 13-c)**

142.   Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

143.   Pursuant to Private Housing Finance Law § 13-c(5), "[n]o otherwise-eligible person shall be prevented from being a candidate for, being elected to, or serving on a board of directors based solely on that person owing or having owed any amount of any form of arrears to the mutual housing company, unless, at the time of nomination, that person currently owes an amount of arrears greater than the equivalent of two months of that person's monthly maintenance."

144.   That section further provides that "[n]o grounds other than the above arrearages in excess of two months maintenance shall be a basis in itself to deny such eligibility to any person unless specifically incorporated in regulations promulgated by or procedures approved by the commissioner or supervising agency. Neither a mutual housing company nor the commissioner or the supervising agency may modify in any way the above limitation so as to restrict eligibility on the basis of fewer than two months of arrears."

145.   Defendants' misconduct, which consisted of imposing an unlawful fine and surcharge in order to prevent Plaintiff Anthony Tesoriere to run as a candidate in an election for a position on the Board, constitutes a violation of Private Housing Finance Law § 13-c(5).

146.   By reason of the foregoing, Defendants are subject to damages, attorney's fees and costs and other appropriate relief, including injunctive and other equitable remedies, as may be determined by a court of competent jurisdiction.

## COUNT VI
### (Pursuant to Private Housing Finance Law § 17)

147.   Pursuant to Private Housing Finance Law § 17(5)(a), "[n]o mutual housing company shall interfere with the right of a shareholder or tenant to form, join or participate in the lawful activities of any group, committee or other organization formed to protect the rights of shareholders and tenants; nor shall any mutual housing company harass, punish, penalize, diminish, or withhold any right, benefit or privilege of a shareholder or tenant under their Proprietary Lease or tenancy for exercising such right."

148.   Defendants have interfered with the rights of Plaintiff shareholders by, among other things, ejecting Plaintiff Anthony Tesoriere from the October 17, 2019 Stockholder's Meeting, preventing him from collecting signatures of shareholders to request a Special Shareholders Meeting be held, impermissibly refusing to permit Plaintiff Anthony Tesoriere to run as a candidate in an election for a position on the Board, imposing an unlawful fine, and threatening to remove Plaintiffs' parking spot if the unlawful fine and surcharges are not paid and thus acceded to, along with the underlying allegations that resulted in the fine.

149.   All of the described acts of the Defendants constitute a violation of Private Housing Finance Law § 17.

150.   By reason of the foregoing, Defendants are subject to damages, attorney's fees and costs and other appropriate relief, including injunctive and other equitable remedies, as may be determined by a court of competent jurisdiction.

<u>COUNT VII</u>
**(Pursuant to New York State Real Property Law § 223-b Retaliation)**

151.   Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

152.   Defendants substantially altered the terms of Plaintiffs' tenancy by invoking false fines, surcharges and assessments.

153.   Defendants substantially altered the terms of Plaintiffs' tenancy in retaliation for Plaintiff Anthony Tesoriere's attempt to become a candidate and challenge the candidacy of the sitting Board members.

154.   Defendants substantially altered the terms of Plaintiff Nancy Tesoriere's tenancy by interfering with and threatening Plaintiffs' right to a required accommodation.

155.   Defendants substantially altered the terms of Plaintiffs' tenancy in retaliation for Plaintiffs refusing to pay and not acceding to the falsely imposed fee and surcharges.

156.   By reason of the foregoing, Defendants are subject to damages, attorney's fees and costs and other appropriate relief, including injunctive and other equitable remedies, as may be determined by a court of competent jurisdiction.

## COUNT VIII
### (Pursuant to New York State Law - Breach of the Proprietary Lease Agreement)

157.   Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

158.   Plaintiffs have complied with all the terms of the Proprietary Lease Agreement and have conducted themselves at all times in accordance with the Agreement.

159.   Defendants have failed to comply with the terms of the Proprietary Lease Agreement.

160.   The failure of the Defendants to comply with the terms of the Proprietary Lease Agreement constitutes a breach of contract.

161.   By reason of Defendants' breach of the Proprietary Lease Agreement, Plaintiffs have been damaged in an amount to be determined at trial but not less than the jurisdictional limits of this court.

162.   Plaintiffs have been damaged by Defendants' breach in an amount to be determined at trial, but in an amount believed to exceed the jurisdictional limit of this Court, together with an award of punitive damages and attorneys' fees and the costs and disbursements which Plaintiffs have incurred as a result of this action.

## COUNT IX
### (Pursuant to New York State Law - Fraud)

163.   Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

164.   Defendants have and had absolutely no basis to claim that a fine should be imposed on Plaintiffs.

165.   Plaintiffs have never violated any terms of the Proprietary Lease Agreement, Alteration Agreement, Declaration, the ever-changing House Rules, or the bylaws.

166.   Defendants had no basis to assert that Plaintiffs painted inside of their apartment because Plaintiffs have never painted inside of their apartment. *See* Exhibit 5.

167.   Defendants made these allegations and caused fraudulent fines to be assessed by falsely claiming and falsely procuring statements that "[o]n or about December 6, 2019, Harway observed paint cans outside of the Unit in the public hallway." *See* Index No. 95/2022, NYSCEF Doc. No. 4 at ¶ 28.

168.   Defendants also falsely claimed and falsely procured a statement that "a Harway employee approached the Unit and "observed the smell of paint and a broken and/or open door lock on the Plaintiffs' Unit. The entrance to the Plaintiffs' Unit was opened and fresh paint was observed emanating from the Plaintiffs' Unit." *Id.* at ¶29.

169.   Defendants further falsely claimed that "[f]urniture was also observed that was covered in plastic." *Id.* at ¶30.

35

170. Plaintiffs have been damaged by Defendants' fraud in an amount to be determined at trial, but in an amount believed to exceed the jurisdictional limit of this Court, together with an award of punitive damages and attorneys' fees and the costs and disbursements which Plaintiffs have incurred as a result of this action.

<u>COUNT X</u>
(Pursuant to New York State Law Judiciary Law §487)

171. Plaintiffs repeat and reallege the allegations contained in the previous paragraphs with the same force and effect as if fully set forth herein.

172. Defendant Shalshina is an attorney admitted to practice in the State of New York subject to New York State Judiciary Law §487.

173. Defendant Shalshina's sworn Verified Answer with Counterclaims in the state action brought by Plaintiff Anthony Tesoriere pro se, contains statements, including among others, that (i) Plaintiffs violated the terms of the "By-laws, Declaration, Proprietary Lease, and House Rules" by failing to fill out an Alteration Agreement; (ii) that "[o]n or about December 6, 2019, Harway observed paint cans outside of the Unit in the public hallway"; (iii) that "a Harway employee approached the Unit and "observed the smell of paint and a broken and/or open door lock on the Plaintiffs' Unit. The entrance to the Plaintiffs' Unit was opened and fresh paint was observed emanating from the Plaintiffs' Unit"; and (iv) that "[f]urniture was also observed that was covered in plastic, which statements constitute deceit.

174. Defendant Shalshina swore to these false statements in the Verified Answer, verified by her, with the intent to deceive the court and/or any party.

175.   As a result of their deceitful conduct, Defendants forfeit to Plaintiffs treble damages pursuant to New York State Judiciary Law §487.

176.   Thus, Plaintiffs are entitled to treble damages in addition to compensatory and punitive damages.

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants as follows:

(i)     On the First Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(ii)    On the Second Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(iii)   On the Third Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(iv)    On the Fourth Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(v)     On the Fifth Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(vi)    On the Sixth Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(vii)   On the Seventh Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages),

together with attorneys' fees, interest and the costs and disbursements of this action;

(viii)  On the Eighth Count, an award of damages in an amount to be determined at trial (and consisting of both compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(ix)  On the Ninth Count, an award of damages in an amount to be determined at trial (and consisting of compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(x)  On the Tenth Count, an award of damages in an amount to be determined at trial (and consisting of treble, compensatory and punitive damages), together with attorneys' fees, interest and the costs and disbursements of this action;

(xi)  For such other and further relief that as this Court may deem just, proper and equitable, together with an award of attorneys' fees and the costs and disbursements of this action.

Dated:      Brooklyn, New York
             August 16, 2022


**ABRAMS FENSTERMAN, LLP**

By: _____
Amy B. Marion
John P. Muldoon
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
(718) 215-5300
amarion@abramslaw.com
*Attorneys for Plaintiffs*